IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ARSENIO AGUILAR PASCUA, | ) | CIVIL NO. 14-00248 SOM/KSC |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART MOTION TO |
| vs. | ) | DISMISS AND DENYING MOTION |
| | ) | FOR SANCTIONS |
| OPTION ONE MORTGAGE | ) | |
| CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
AND DENYING MOTION FOR SANCTIONS**

**I.      INTRODUCTION.**

Defendants Homeward Residential, Inc. ("Homeward"),

Wells Fargo Bank, National Association as Trustee for Soundview

Home Loan Trust 2007-OPT5, Asset-Backed Certificates, Series

2007-OPT5 ("Wells Fargo"), Ocwen Loan Servicing, LLC ("Ocwen"),

and Sand Canyon Corporation ("Sand Canyon") (collectively,

"Defendants"), move: (1) to dismiss Plaintiff Arsenio Aguilar

Pascua's Complaint; and (2) for sanctions against Pascua and

Pascua's counsel, Robert L. Stone of Property Rights Law Group of

Hawai'i, Inc.  The motion to dismiss is granted in part and

denied in part and the motion for sanctions is denied.

**II.      FACTUAL BACKGROUND.**

Defendants' motions are based on the contention that

Pascua, in his Complaint filed on May 28, 2014, is seeking to

religitate an issue that this court decided in a previous action.

ECF No. 29-1, PageID # 354-55.

The previous action, <u>Pascua v. Option One Mortgage Corp.</u>, Civ. No. 13-00406 SOM/KSC ("<u>Pascua I</u>"), filed on August 21, 2013, was dismissed for lack of subject matter jurisdiction. <u>See</u> <u>Pascua I</u>, Civ. No. 13-00406 SOM/KSC, 2014 WL 806226 (D. Haw. Feb. 28, 2014).[1]  At the time the court entered its dismissal order in <u>Pascua I</u>, the court had before it only a quiet title claim.  <u>Id.</u>  The court determined that Pascua had failed to show that his only alleged injury (i.e., his alleged uncertainty about which entity he was indebted to) equated with an amount in controversy in excess of $75,000, as required to establish diversity jurisdiction.  <u>Id.</u>

Prior to this court's ruling as to the quiet title claim in <u>Pascua I</u>, Pascua voluntarily dismissed claims under the Fair Debt Collections Practices Act ("FDCPA") and Hawaii's Unfair Competition and Practices Act ("UDAP").  <u>Id.</u> at *1.  Pascua's dismissal of those claims came in response to Defendants' contention that Pascua's FDCPA claim was so patently frivolous

_____

[1] <u>Pascua I</u> is one of several previously rejected actions containing nearly identical allegations and claims filed by plaintiffs represented by Robert L. Stone of Property Rights Law Group of Hawai'i, Inc.  <u>See, e.g.</u>, <u>Dimitrion v. Morgan Stanley Credit Corp.</u>, No. 13-00125 DKW/BMK, 2014 WL 2439631 (D. Haw. May 29, 2014); <u>Broyles v. Bank of Am., N.A.</u>, No. 13-00540 LEK/KSC, 2014 WL 1745097 (D. Haw. Apr. 30, 2014); <u>Moore v. Deutsche Bank Nat. Trust Co.</u>, No. 13-00506 DKW/RLP, 2014 WL 1745076 (D. Haw. Apr. 30, 2014); <u>Wegesend v. Envision Lending Grp., Inc.</u>, No. 13-00493 DKW/KSC, 2014 WL 1745340 (D. Haw. Apr. 30, 2014); <u>Dicion v. Mann Mortgage, LLC</u>, No. 13-00533 JMS/KSC, 2014 WL 1366151 (D. Haw. Apr. 4, 2014).

that it should not be treated as conferring federal question jurisdiction. Pascua's offer to dismiss his FDCPA claim in Pascua I rendered moot the issue of whether the FDCPA claim was frivolous and was asserted merely to obtain jurisdiction. Although cognizant that jurisdiction is ordinarily determined based on circumstances existing at the time suit commences, this court deemed it prudent, given Defendants' allegations concerning the FDCPA claim, to look at whether there was an independent basis for federal jurisdiction for the remaining quiet title claim. The court additionally examined the quiet title claim for an independent basis for federal jurisdiction with respect to Defendant Option One because the quiet title claim was the only claim asserted against that Defendant. That is, because Option One had not been sued in the withdrawn counts, it was not clear that there was subject matter jurisdiction with respect to Option One.

On May 28, 2014, Pascua filed a Complaint in this new action ("Pascua II") against the same parties he had sued in Pascua I. See ECF No. 1. Based on the same factual circumstances outlined in this court's order in Pascua I, the Pascua II Complaint asserts claims for violation of the FDCPA (Count I), for slander of title (Count II), and for quiet title (Count III). Id. Pascua did not assert a slander of title claim in Pascua I, but the FDCPA and quiet title claims in Pascua II

are nearly identical to those in Pascua I.

**III.     STANDARD.**

**A.     Rule 12(b)(1).**

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a complaint may be dismissed for lack of subject matter jurisdiction.

An attack on subject matter jurisdiction "may be facial or factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack asserts that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Id. A factual attack, on the other hand, "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Id.

If the moving party makes a facial challenge, the court's inquiry is "confin[ed] . . . to allegations in the complaint." Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty., 343 F.3d 1036, 1040 (9th Cir. 2003). Such allegations are taken by the court as true. Courthouse News Serv. v. Planet, 750 F.3d 776, 780 (9th Cir. 2014).

**B.     Rule 12(b)(6).**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court's review is generally limited to the contents of the complaint. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Campanelli v. Bockrath, 100

4

F.3d 1476, 1479 (9th Cir. 1996). If matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment. See Keams v. Tempe Tech. Inst., Inc., 110 F.3d 44, 46 (9th Cir. 1997); Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996). Courts may "consider certain materials--documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice--without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996). However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. Sprewell, 266 F.3d at 988; Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996). Additionally, the court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. Sprewell, 266 F.3d at 988.

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts

under a cognizable legal theory.  Balistreri v. Pacifica Police
Dept., 901 F.2d 696, 699 (9th Cir. 1988) (citing Robertson v.
Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.
1984)).

"[T]o survive a Rule 12(b)(6) motion to dismiss,
factual allegations must be enough to raise a right to relief
above the speculative level, on the assumption that all the
allegations in the complaint are true even if doubtful in fact."
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal
quotation marks omitted); accord Ashcroft v. Iqbal, 556 U.S. 662,
678 (2009) ("[T]he pleading standard Rule 8 announces does not
require 'detailed factual allegations,' but it demands more than
an unadorned, the-defendant-unlawfully-harmed-me accusation").
"While a complaint attacked by a Rule 12(b)(6) motion to dismiss
does not need detailed factual allegations, a plaintiff's
obligation to provide the 'grounds' of his 'entitlement to
relief' requires more than labels and conclusions, and a
formulaic recitation of the elements of a cause of action will
not do."  Twombly, 550 U.S. at 555.  The complaint must "state a
claim to relief that is plausible on its face."  Id. at 570.  "A
claim has facial plausibility when the plaintiff pleads factual
content that allows the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged."  Iqbal,
556 U.S. at 678.

IV.    ANALYSIS.

    A.    Motion to Dismiss.

        1.    **Pascua Lacks Standing to Pursue His Quiet Title and Slander of Title Claims.**

        Under Article III of the United States Constitution, the jurisdiction of federal courts is limited to cases and controversies. Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992). One of the means by which a federal court determines whether a dispute is a justiciable case or controversy is the doctrine of standing. Id. at 560. Standing may be raised through a motion to dismiss under Rule 12(b)(1) because it bears on a federal court's subject matter jurisdiction. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).

        To establish standing under Article III, "a plaintiff must show (1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent . . . ; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Covington v. Jefferson Cnty., 358 F.3d 626, 637-38 (9th Cir. 2004) (internal quotation marks omitted).

        The plaintiff has the burden of establishing standing based on the complaint. Raines v. Byrd, 521 U.S. 811, 818 (1997); Lujan, 504 U.S. at 561. "Since they are not mere pleading requirements but rather an indispensable part of the

7

plaintiff's case, each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Lujan, 504 U.S. at 561.

Pascua has not demonstrated that he has standing to pursue his quiet title and slander of title claims. With respect to his quiet title claim, Pascua asks this court for a judgment "declaring the rights of the parties" because "[o]nly with a declaratory judgment can [Pascua] know to which party to make his future mortgage payment." ECF No. 1, PageID # 34. Pascua "does not dispute that he owes a debt under the Note and Mortgage," but alleges that he is unsure of which party is entitled to payment. Id. As noted in Pascua I, Pascua's asserted injury to support his quiet title claim is apparently the possibility of being "liable for double payments" if he pays the wrong party. Id.

With respect to Pascua's slander of title claim, this court asked Pascua's counsel to come to the hearing on the present motion prepared to discuss how the slander of title claim differs from the quiet title claim. See ECF No. 34. At the hearing, Pascua's counsel explained that the slander of title claim differs from the quiet title claim by including allegations that Option One, appearing in this action as Sand Canyon Corporation, undertook specific action to intentionally harm

8

Pascua. The specific action alleged was Option One's recordation of a mortgage after the mortgage had allegedly already been assigned to another entity. However, Pascua's counsel conceded that no two entities had recorded the same secured interest in Pascua's property for overlapping time periods. The court was thus at a loss as to how Pascua had suffered an actual injury through Option One's recordation of the mortgage. Pressed at the hearing on the present motion to identify what the alleged injury to Pascua really was in light of counsel's acknowledgment that no two entities had recorded the same interest for the same time period, Pascua's counsel said that Pascua's injury was his inability to determine with whom he could negotiate, which entity had the right to foreclose on his property, and which entity was entitled to receive monthly mortgage payments. Pascua's counsel's statement demonstrates that the only injury really being alleged in support of Pascua's slander of title claim is the same injury underlying his quiet title claim.

Contrary to Pascua's contentions, this injury does not support Article III standing. The potential for double liability relating to alleged uncertainty as to Defendants' various interests does not suffice as an injury-in-fact. Pascua's counsel confirmed at the hearing on this motion that no two entities have simultaneously demanded payment from Pascua. Absent multiple demands or any allegation that foreclosure

9

proceedings have been commenced against him, the double liability Pascua fears cannot reasonably be characterized as "imminent," as required for this court to find an injury-in-fact. See Schmier v. U.S. Court of Appeals for Ninth Circuit, 279 F.3d 817, 821 (9th Cir. 2002) ("[The] injury must have actually occurred or must occur imminently; hypothetical, speculative or other 'possible future' injuries do not count in the standings calculus.").

Pascua's injury is, at best, his confusion and uncertainty as to which party can properly demand payment and, correspondingly, which party he should pay. Pascua fails to demonstrate that this injury is sufficiently concrete or particularized to support an injury-in-fact. See Dicion, 2014 WL 1366151, at *4 ("Plaintiff's injury is no more than his own uncertainty regarding which Defendant is entitled to his mortgage payments. Such a subjective uncertainty is neither sufficiently concrete nor particularized to constitute an injury-in-fact."); see also City of Los Angeles v. Lyons, 461 U.S. 95, 107 n.8 (1983) ("It is the reality of the threat of [objective] injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions."). Further, even assuming that Pascua's alleged uncertainty as to Defendants' interests, or as to which party is entitled to payment, constituted an injury-in-fact, Pascua's alleged injury does not appear fairly traceable to

10

wrongful conduct by Defendants.

In his opposition to Defendants' motion to dismiss, Pascua appears to argue that his injury-in-fact is the possibility of being "subjected to a wrongful foreclosure" as a result of his alleged uncertainty regarding the parties' respective interests. ECF No. 32, PageID # 32. Even if such a purported injury had been alleged in the Complaint, it would not constitute an injury-in-fact considering the absence of any allegation that any Defendant has actually commenced foreclosure proceedings against Pascua and considering that the possibility of a wrongful foreclosure is premised on the same alleged uncertainty that this court has already determined is insufficient to confer standing. Under these circumstances, Pascua's concern about a wrongful foreclosure is not "imminent." See Krottner v. Starbucks Corp., 628 F.3d 1139, 1143 (9th Cir. 2010) ("If a plaintiff faces a credible threat of harm, and that harm is both real and immediate, not conjectural or hypothetical, the plaintiff has met the injury-in-fact requirement for standing under Article III."); Schmier, 279 F.3d at 821 ("[The] injury must have actually occurred or must occur imminently; hypothetical, speculative or other 'possible future' injuries do not count in the standings calculus.").

Pascua also contends in his opposition that "the title to his home has been clouded" and "[t]hat alone is an injury-in-

fact." ECF No. 32, PageID # 431. This purported injury is nothing but an unsupported legal conclusion insufficient to establish an injury-in-fact. See Maya v. Centex Corp., 658 F.3d 1060, 1068 (9th Cir. 2011). A homeowner's alleged uncertainty as to the identity of a note holder does not create a cloud on title. See Klohs v. Wells Fargo Bank, N.A., 901 F. Supp. 2d 1253, 1261 (D. Haw. 2012) ("[E]ven assuming some yet unknown entity is the true Note Holder entitled to receive payments, the fact that the entity is unknown is not a cloud on the title." (quoting Homeyer v. Bank of Am., No. 1:12-cv-00021-EJL-CWD, 2012 WL 4105132, at *6 (D. Idaho Aug. 27, 2012) (internal quotation marks omitted))).

Pascua's allegations fail to establish his standing to pursue the quiet title claim and slander of title claim. Accordingly, this court lacks subject matter jurisdiction to hear those claims.

### 2. Pascua Appears to Have Standing to Pursue His FDCPA Claim.

Defendants also argue that Pascua lacks standing to pursue his FDCPA claim. Defendants contend that Pascua's counsel's admission that there was no damage associated with Pascua's FDCPA claim in Pascua I precludes Pascua from asserting damages with respect to his FDCPA claim in this action and prevents him from establishing an injury-in-fact to support standing for the claim. ECF No. 29-1, PageID # 366. However, it

is not clear to this court that Pascua's counsel's statement

regarding the FDCPA claim in Pascua I precludes Article III

standing.  Counsel stated, "Counts 1 and 2 [the FDCPA and state

UDAP claims] were made in good faith because we're alleging--

we're alleging deceptive behavior, but he's right that there is

no damage on there."  Civ. No. 13-00406, ECF No. 36, PageID #

675-76.  Viewed in the light most favorable to Pascua, that

statement, made just before voluntary dismissal of the claim,

appears to have concerned at most only actual damages, not every

injury-in-fact, which may involve other damages, such as

statutory damages.

        The FDCPA allows for a maximum of $1,000 in statutory

damages even in the absence of actual injury.  See 15 U.S.C.

§ 1692k(a)(2)(A).  Pascua requests an award of statutory damages

in his Complaint.  See ECF No. 1, PageID # 31.  An alleged

violation of a statutory right not requiring actual damages

constitutes an injury-in-fact for standing purposes.  See

Tourgeman v. Collins Fin. Servs., Inc., 755 F.3d 1109, 1116 (9th

Cir. 2014); see also Robey v. Shapiro, Marianos & Cejda, L.L.C.,

434 F.3d 1208, 1212 (10th Cir. 2006).  Therefore, Pascua's

counsel's statement in Pascua I is insufficient to establish that

Pascua lacks standing to pursue his FDCPA claim in the present

action.

### 3.    Judicial Estoppel Does Not Apply.

Defendants argue alternatively that, even if Pascua has standing, he is judicially estopped from asserting damages with respect to his FDCPA claim given his counsel's statement at the hearing in <u>Pascua I</u>.  This court disagrees.

The crux of the judicial estoppel doctrine is "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." <u>New Hampshire v. Maine</u>, 532 U.S. 742, 750-51 (2001) (internal quotation marks omitted).  No such concern arises in this case. Pascua's counsel discussed the absence of damage with respect to the FDCPA and UDAP claims in <u>Pascua I</u> as a prelude to voluntarily dismissing those counts of the Complaint.  This court took no action premised on Pascua's counsel's representation that there was no damage.  That is, the court did no more and no less as a result of Pascua's counsel's statement regarding damages.  As a result, there is no risk of inconsistent determinations here. <u>See</u> <u>id.</u> ("Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity." (internal quotation marks and citation omitted)).

Even if judicial estoppel applied, it would restrict

only a claim for actual damages, not a claim for up to $1,000 in statutory damages even in the absence of actual damages under the FDCPA.  At this point, this court is not persuaded that judicial estoppel applies at all and therefore places no restriction on the relief Pascua seeks under the FDCPA.

**4.    Issue Preclusion Applies to Only the Quiet Title Claim Against Option One.**

Defendants also contend that the Complaint in Pascua II is barred by issue preclusion because "the Court decided the same jurisdictional issue in Pascua I."  ECF No. 29-1, PageID # 358.

Issue preclusion "preclude[s] relitigation of both issues of law and issues of fact if those issues were conclusively determined in a prior action."  Wolfson v. Brammer, 616 F.3d 1045, 1064 (9th Cir. 2010) (internal quotation marks omitted).  Issue preclusion bars relitigation of an issue "if four requirements are met: (1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated; (3) there was final judgment on the merits; and (4) the person against whom [issue preclusion] is asserted was a party to or in privity with a party in the previous action."  Id. (internal quotation marks omitted).

A dismissal based on a curable defect in jurisdiction is not generally considered an adjudication on the merits for the purposes of issue preclusion, thus permitting a "second action on the same claim . . . after correction of the deficiency."  Id.

15

However, the dismissal does operate as a bar to relitigation of the jurisdictional issue actually decided. See Dicion v. Mann Mortgage, LLC, Civ. No. 14-00252 JMS-KSC, 2014 WL 5827137, at *5-6 (D. Haw. Nov. 10, 2014); see also 18A Wright, Miller & Cooper, Federal Practice & Procedure § 4436 ("[T]he dismissal permits a second action on the same claim that corrects the deficiency found in the first action. The judgment remains effective to preclude relitigation of the precise issue of jurisdiction or venue that led to the initial dismissal.").

As explained in Perry v. Sheahan, 222 F.3d 309 (7th Cir. 2000), a decision cited by Defendants:

> Although only judgments on the merits preclude parties from litigating the same cause of action in a subsequent suit, that does not mean that dismissals for lack of jurisdiction have no preclusive effect at all. A dismissal for lack of jurisdiction precludes relitigation of the issue actually decided, namely the jurisdictional issue. The difference is in the type of preclusion, not the fact of preclusion. A judgment on the merits precludes relitigation of any ground within the compass of the suit, while a jurisdictional dismissal precludes only relitigation of the ground of that dismissal . . . and thus has collateral estoppel (issue preclusion) effect rather than the broader res judicata effect that nowadays goes by the name of claim preclusion.

Id. at 318 (internal quotation marks and brackets omitted).

Defendants seek dismissal based on issue preclusion under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Having determined that Pascua has no injury-in-fact giving rise

16

to standing to pursue his quiet title or slander of title claims, this court may, of course, examine alternative jurisdictional bars to those claims under Rule 12(b)(1). However, this court questions whether issue preclusion is a jurisdictional matter at all. Issue preclusion appears more appropriately addressed under Rule 12(b)(6). See, e.g., Holcombe v. Hosmer, 477 F.3d 1094, 1097 (9th Cir. 2007) (analyzing preclusion under Rule 12(b)(6)). This court does not normally assume jurisdiction and address Rule 12(b)(6) issues when it knows it lacks jurisdiction.

Even if Defendants are correct in viewing issue preclusion as a jurisdictional issue, issue preclusion does not have the far-reaching impact Defendants posit. At most, issue preclusion applies only to the portion of the quiet title claim asserted against Option One. That is, assuming this court's standing analysis does not suffice to deny jurisdiction over the quiet title claim against Option One and the court searches for an independent basis for federal jurisdiction over that claim against Option One, the court would note the absence of federal question jurisdiction (as Option One is not sued for an FDCPA violation) and of diversity jurisdiction (because there is not more than $75,000 in controversy). The quiet title claim against Option One in this action is the same as the quiet title claim against Option One in Pascua I. As this court determined in

17

<u>Pascua I</u> that more than $75,000 was not in controversy, that issue has already been litigated and cannot be relitigated here.

By contrast, the quiet title claim against Homeward, Wells Fargo, and Ocwen is not in the same posture as the quiet title claim against those Defendants in <u>Pascua I</u>. In the present case, the FDCPA claim against those Defendants has not been dismissed, and gives rise to federal question jurisdiction. As a result, this court has no need to determine whether diversity jurisdiction exists with respect to those Defendants. The presence of federal question jurisdiction obviates the need for Pascua to meet the amount-in-controversy diversity requirement with respect to those Defendants. Instead, with respect to those Defendants, the court may exercise supplemental jurisdiction over both the quiet title and slander of title claims under 28 U.S.C. § 1367. As a result, the amount-in-controversy jurisdictional issue actually decided in <u>Pascua I</u> is irrelevant with respect to those Defendants named in the FDCPA claim asserted in the present case.

### 5. Leave to Amend.

When a complaint is dismissed, "[l]eave to amend may be denied if a court determines that allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." <u>Abagninin v. AMVAC Chem. Corp.</u>, 545 F.3d 733, 742 (9th Cir. 2008) (internal quotation marks omitted). The

allegation of additional facts consistent with the Complaint in this matter could not possibly establish Pascua's standing to pursue his quiet title claim or his slander of title claim. Therefore, this court dismisses those claims without leave to amend.

### B.    Motion for Sanctions.

The Ninth Circuit has established that a court may impose sanctions, including attorneys' fees, when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," and that sanctions may issue "against counsel who willfully abuse judicial processes." Fink v. Gomez, 239 F.3d 989, 991 (9th Cir. 2001) (internal quotation marks omitted). While the court's inherent power "extends to a full range of litigation abuses," to issue sanctions a court must find bad faith or "conduct tantamount to bad faith." Id. at 991, 994. "Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." Id. at 994.

Defendants argue that this court should issue sanctions against Pascua and his counsel pursuant to its inherent power. This court does not find that Pascua or his counsel acted in bad faith or engaged in conduct tantamount to bad faith. Therefore, the court denies Defendants' request.

**V.      CONCLUSION.**

Defendants' motion to dismiss is granted in part and denied in part.  Pascua's slander of title claim (Count II) and quiet title claim (Count III) are dismissed with prejudice for lack of jurisdiction, leaving Pascua's FDCPA claim for further adjudication.  Defendants' motion for sanctions is denied.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 31, 2014.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Pascua v. Option One Mortgage Corporation, et al., Civ. No. 14-00248 SOM/KSC; ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND DENYING MOTION FOR SANCTIONS